## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**MITCHELL HARRIS,**

      **Petitioner,**

**v.**                                                    **Case No.  4:15cv240-RH/CAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On April 26, 2015, Petitioner Mitchell Harris, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1. Respondent filed an answer with exhibits on February 18, 2016.  ECF No. 16.  Petitioner filed a reply on May 19, 2016.  ECF No. 20.  Petitioner challenges his convictions and life sentence for attempted second-degree murder with a firearm and burglary of a dwelling while armed with a firearm entered by the Circuit Court of the Second Judicial Circuit, Leon County Florida.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary

hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

## **Background and Procedural History**

On September 16, 2009, Petitioner was charged by Information with

the August 23, 2009, attempted second-degree murder of David L. Jones

by discharge and injury with a firearm in violation of sections 777.04,

782.04(2), and 775.087, Florida Statutes; and, armed burglary of Jones'

dwelling in Leon County, Florida, with intent to commit theft or robbery or

some offense therein, in violation of sections 775.087 and 810.02(2)(b),

Florida Statutes.  Ex. A at 7.[1]  Jury trial was held on November 9-10, 2010,

at which no defense witnesses were presented.  Exs. C, D, E.  The jury

found Petitioner guilty as charged on both counts, Ex. E at 350-51; Ex. A at

47-51.  On December 29, 2010, Petitioner appealed his judgment and

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through R submitted with Respondent's answer, ECF No. 16, unless otherwise indicated.

sentence to the state First District Court of Appeal and his appointed counsel filed an <u>Anders</u> brief.[2]  Ex. H.

During the pendency of the appeal, Petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(b)(2), alleging error in imposition of certain fines and surcharges.  Ex. G at 117.  The trial court partially granted the motion and entered a corrected judgment and sentence.  Ex. G at 137-44.  The state district court of appeal issued an opinion on November 2, 2012, affirming the judgment and sentence but striking the $100 indigent legal assistance lien and certain court costs.  Ex. I.  The mandate was issued on November 28, 2012.  Ex. I.  *See* <u>Harris v. State</u>, 100 So. 3d 245 (Fla. 1st DCA 2012) (mem).

On January 16, 2013, Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 raising a number of claims.[3]  Ex. K at 181-207.  After response and reply, the trial court held a

---

[2] <u>Anders v. California</u>, 386 U.S. 738 (1967).

[3] The Rule 3.850 motion raised the following claims alleging that trial counsel was ineffective in (1) failing to request a special jury instruction on use of excessive force; (2) failing to request jury instructions on independent act and principal theories; (3) conceding guilt without consultation; (4) failing to file a motion in limine to prevent the State from suggesting an unsupported motive; (5) failing to file a motion in limine or object regarding prejudicial comments by State witnesses; (6) failing to object to prosecutorial misconduct during the State's case-in-chief; (7) failing to request a jury instruction on self-defense; (8) failing to object to prosecutorial misconduct in closing argument; and (9) failing to file a motion for new trial challenging the weight and/or sufficiency of the evidence.  Ex. K at 181-207.

hearing on the motion on December 18, 2013, at which Petitioner's trial counsel and Petitioner testified.  Ex. K at 254-302.  The Rule 3.850 motion was denied "based on the reasons announced on the record" that Petitioner failed to demonstrate any ineffective assistance of counsel.  Ex. K at 245; Ex. K at 291-300.  Petitioner appealed and filed a pro se brief raising only two claims: whether the court erred in allowing post-conviction counsel to abandon his post-conviction Claim 2 and whether the post-conviction court erred in denying relief on the claim that counsel improperly conceded guilt on a lesser offense.  Ex. L.  In the answer brief, the State addressed all the post-conviction claims.  Ex. M.  The First District Court of Appeal affirmed per curiam without explanation on December 17, 2014.  Ex. O.  Rehearing was denied and the mandate was issued on February 23, 2015.  Ex. R.  *See* Harris v. State, 156 So. 3d 1079 (Fla. 1st DCA 2014) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following nine grounds for relief:

> (1) Trial counsel rendered ineffective assistance by failing to request a special jury instruction regarding the use of excessive force.  ECF No. 1 at 20.
> (2) Trial counsel rendered ineffective assistance by failing to request jury instructions on the independent act theory or principal theory which would have prevented the State from

transferring intent from one Defendant to the other.  ECF No. 1 at 23.

(3) Trial counsel rendered ineffective assistance by conceding guilt without first discussing the pros and cons of such a defense strategy.  ECF No. 1 at 27.

(4) Trial counsel rendered ineffective assistance by failing to file a motion in limine to prevent mention of an unsupported motive for the State's theory of a "planned" criminal episode. ECF No. 1 at 29.

(5) Trial counsel rendered ineffective assistance by failing to file a motion in limine, or object, regarding highly prejudicial comments by witnesses that were not relevant.  ECF No. 1 at 31.

(6) Trial counsel rendered ineffective assistance in failing to object to prosecutorial misconduct in the State's case-in-chief.  ECF No. 1 at 32.

(7) Trial counsel rendered ineffective assistance in failing to request jury instructions on self-defense where evidence warranted such an instruction.  ECF No. 1 at 35.

(8) Trial counsel rendered ineffective assistance by failing to object to highly prejudicial prosecutorial comments in closing argument.  ECF No. 1 at 36.

(9)  Trial counsel rendered ineffective assistance in failing to file a motion for new trial challenging the weight and/or sufficiency of the evidence.  ECF No. 1 at 39.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v.

Secretary, Florida Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015)

(quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

Petitioner must "fairly present" his claim in each appropriate state court in

order to alert the state courts to the federal nature of the claim. Duncan v.

Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275

(1971).

   This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1).

   For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate

deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690). "[E]very effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." 466 U.S. at

694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)). "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and

prejudice must be shown to demonstrate a violation of the Sixth

Amendment. Thus, the court need not address both prongs if the petitioner

fails to prove one of the prongs. Strickland, 466 U.S. at 697. With these

standards in mind, we turn to Ground 1 of the § 2254 petition.

### Ground 1: Jury Instruction on Use of Excessive Force

Petitioner first contends that his trial counsel rendered ineffective

assistance by failing to request a special jury instruction regarding the use

of excessive force.  ECF No. 1 at 20.  He argues that trial counsel should

have requested a special instruction stating:

> An (Attempted) killing arguably made in self-defense may be
> deemed (Attempted) manslaughter, where the Defendant
> claims self-defense, but the claim of self-defense is not
> sufficiently supported by the evidence. . . and;
> If you reject the Defendant's claim of self-defense and find,
> from a result of heat of passion, Defendant used more (force
> than reasonable), the offense is manslaughter.

ECF No. 1 at 20-21.[4]  The factual context of the defense which Petitioner

contends supports such an instruction is alleged to be his statement to

police in which he said that the victim, David Jones, sold him fake drugs

and when Petitioner returned to Jones' apartment with a gun seeking to get

his money back or get real cocaine, he was allowed in but an argument and

struggle ensued over the gun resulting in the gun discharging and striking

Jones.  ECF No. 1 at 21.  Petitioner contends that the instruction was

necessary because if the jury did not agree with Petitioner's self-defense

claim, they could have found him guilty of the lesser offense of

manslaughter in heat of passion.  ECF No. 1 at 23.

At trial, the victim testified that Petitioner and another man came to

his door and said they knew his uncle.  Shortly thereafter, he said, the men

---

[4] Petitioner cites <u>Popps v. State</u>, 162 So. 701 (Fla. 1935), and <u>Alday v. State</u>, 57 So. 2d.
333 (Fla. 1952), as authority for this instruction.

pushed him inside the house and pulled a gun.  Ex. C at 52-62.  Jones said Petitioner pointed a gun at his face and the other man was pushing Jones' fiancée and demanding money.  Jones said he pushed the gun away from his face and Petitioner shot him in the shoulder.  They fought over the gun and it went off several more times.  When the gun came out of Petitioner's hand, Jones retrieved it and ran down the stairs.  Jones testified he shot Petitioner from about 30 feet away as Petitioner, who was wounded by the shot, was running.  Ex. C at 56-81.  The officer who found Petitioner lying on the ground wounded testified that Petitioner said "crack" was making him do bad things.  Ex. E at 262.   Petitioner's statement given to police after Miranda warnings was also given in evidence in which Petitioner said he and several others bought crack cocaine from the victim and returned to the vehicle to smoke it but found it had a "weird taste."  Ex. D at 219-20. Petitioner told the officer that he asked his friend, Ra-Ra, for his gun, which Petitioner put in his waistband returned with Ra-Ra to Jones' apartment "to get their money back or get new crack cocaine."  *Id.* at 220.  Petitioner told police that Jones let him in and he explained that he wanted his money back.  *Id.* at 221.  Petitioner said when he was lifting the gun from his waistband, Jones grabbed at the gun and a wrestling match ensued during which the gun went off several times.  *Id.*   Other eyewitnesses testified that

Petitioner was the aggressor and threatened to shoot Jones in the head, and that when Jones pushed the gun away, he was shot in the arm. The gun was fired several times.

This claim of ineffective assistance was raised in the trial court and denied, with the court concluding that Petitioner had not shown any entitlement to a special instruction on excessive use of force, and that even if one had been given, it would not have changed the result of the trial because Petitioner was the aggressor. Ex. K at 292. Denial of the claim was not appealed to the state district court of appeal, thus it is unexhausted and procedurally defaulted. Petitioner did not "fairly present" this claim in each appropriate state court in order to alert the state courts to the federal nature of the claim, as is required for exhaustion in the state courts. *See* Henry, 513 U.S. at 365. Regardless of any default, the claim is without merit.

At the hearing on the Rule 3.850 motion, trial counsel testified that, in his view, the authority cited by Petitioner was inapplicable in the present case, noting that the Alday case cited by Petitioner involved a law enforcement shooting, and that the instructions given sufficiently apprised the jury of the law relating to justifiable and excusable homicide. Ex. K at

260.  The state First District Court of Appeal affirmed denial of relief on this

claim and that decision is entitled to AEDPA deference.

Under Florida law, a trial court has wide discretion regarding the

instructions to be given the jury.  *See e.g.*, Kearse v. State, 662 So. 2d 677,

686 (Fla. 1995).  The initial determination of the applicable substantive law

in each case should be made by the trial judge and the judge is charged

with correctly instructing the jury in each case.  Matter of Use by Trial

Courts of Standard Jury Instructions in Criminal Cases, 431 So. 2d 594,

598 (Fla. 1981).  Florida's standard jury instructions are presumed correct

and are preferred over special instructions.  Gutierrez v. State, 177 So. 3d

226, 230 (Fla. 2015).  Florida courts are generally required to adhere to the

standard jury instructions unless the judge determines the instruction does

not accurately and adequately state the relevant law.  Moody v. State, 359

So. 2d 557, 560 (Fla. 4th DCA 1978).  "Whether defense counsel erred by

not requesting a specific jury instruction depends on the state law that

governed the defendant's trial."  Brown v. Warden, 562 F. App'x 779, 781

(11th Cir. 2014) (unpublished) (citing Williams v. Allen, 598 F.3d 778, 800-

02 (11th Cir. 2010) (relying on state law in a habeas corpus action to

establish whether jury instructions were properly given)).  Petitioner has

failed to establish that the standard instructions given in the case were

inaccurate or insufficient in light of the evidence presented and that a special instruction on excessive use of force was necessary or appropriate under state law.  Thus, the state court correctly determined that counsel was not deficient in requesting a special instruction on use of excessive force.

The jury in this case was instructed that an attempted killing is excusable if it occurs "by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation."  Ex. E at 329.  The jury was also instructed as to the offenses of attempted manslaughter, aggravated battery, and aggravated assault.  Ex. E at 332.  Thus, the jury was given the opportunity to find Petitioner not guilty if it concluded that the shooting was in the heat of passion or on sudden provocation.  The jury was also given the necessary instructions to find Petitioner guilty of the lesser included offense of attempted manslaughter if it concluded the evidence failed to prove that the act was imminently dangerous to another and evincing a depraved mind without regard for human life, as is required to prove attempted second-degree murder.  *See* Ex. E at 330.  The post-conviction court found that trial counsel was not deficient in requesting a special instruction on excessive use of force and that, in light of the evidence presented that Petitioner brought the gun, was the aggressor,

threatened the victim with the gun, and fired the gun, prejudice had not been proven.

The state court's determination has not been shown to be incorrect on this record.  Moreover, in federal habeas review, the question is not whether this court believes the state court's determination was incorrect but whether that determination was unreasonable.  *See* Mirzayance, 556 U.S. at 123.  Petitioner has not demonstrated that the trial court's adjudication that trial counsel was not ineffective in failing to request the special instruction was unreasonable based on the trial court record.  Further, the adjudication was not contrary to Strickland, or any other clearly established federal law as determined by the Supreme Court.  Habeas relief on Ground 1 should be denied.

## Ground 2: Jury Instructions on Independent Act and Principals

Petitioner contends in this claim that trial counsel rendered ineffective assistance by failing to request jury instructions on the independent act theory or principal theory which, he argues, would have prevented the State from transferring intent from one cofelon to the other.  ECF No. 1 at 23.  The claim was raised in the trial court in Petitioner's Rule 3.850 motion but post-conviction counsel announced he would not proceed on the claim.  Ex. K at 257.  Accordingly, the post-conviction court did not expressly

address this claim in the reasons given on the record for denying post-conviction relief or in the written the order that followed. *See* Ex. K at 291-300. On appeal from denial of post-conviction relief, Petitioner raised as error his counsel's abandonment of this claim, Ex. L, but the state district court of appeal affirmed per curiam without explanation. Ex. O. Regardless of any procedural default on this claim for failing to obtain state court adjudications in each appropriate court, the claim is without merit, as will be discussed.

Petitioner argues that during trial, the prosecutor highlighted the unidentified person who accompanied Petitioner to Jones' apartment and who was heard to be yelling to Petitioner to shoot Jones. ECF No. 1 at 23. He argues that the prosecutor improperly argued there was a plan and intent to shoot Jones. However, Petitioner was charged with and convicted of attempted second-degree murder which under Florida law requires no intent to kill, only that the act evinced a depraved mind without regard for human life. *See, e.g.*, Haygood v. State, 109 So. 3d 735, 740 (Fla. 2013) (reiterating that second-degree murder "does not require proof that the defendant intended to kill the victim") (quoting State v. Montgomery, 39 So. 3d 252, 256 (Fla. 2010)). The evidence presented was that Petitioner

carried the gun, aimed the gun, and discharged the gun numerous times during the incident.

Even though another individual accompanied Petitioner to the residence and urged him to shoot, this evidence does not support an independent act instruction.  The Florida Standard Jury Instruction (Crim.) 3.6(*I*), Independent Act, provides as follows:

> If you find that the crime alleged was committed, an issue in this case is whether the crime of (crime alleged) was an independent act of a person other than the defendant.  An independent act occurs when a person other than the defendant commits or attempts to commit a crime
>
> 1. which the defendant did not intend to occur, and
>
> 2. in which the defendant did not participate, and
>
> 3. which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant.
>
> If you find the defendant was not present when the crime of (crime alleged) occurred, that does not, in and of itself, establish that the (crime alleged) was an independent act of another.
>
> If you find that the (crime alleged) was an independent act of another, then you should find (defendant) not guilty of (crime alleged).

Under Florida law, the independent act doctrine arises only "when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.' " Bradley v. State, 33 So.

3d 664, 672 (Fla. 2010) (quoting <u>Willacy v. State</u>, 967 So. 2d 131, 141 (Fla. 2007)).  The independent act theory is not appropriate when the defendant created the situation and the injury was a natural and foreseeable result of forces that the defendant set in motion.  *See id.*  In this case, it was not the acts of a cofelon that were at issue.  The shooting was the foreseeable result of the actions of Petitioner, which he set in motion by bringing the gun, pointing the gun at the victim, discharged the gun, and shooting the victim.  The independent act instruction was not supported by the evidence and denial of the claim of ineffective assistance of counsel for failing to request it is not unreasonable in light of the state court record.

Petitioner also contends that trial counsel was ineffective in failing to request a "Principals" instruction.  Florida Standard Jury Instruction (Crim.) 3.5(a), Principals, implementing section 777.011, Florida Statutes, provides as follows:

> If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he] [she] had done all the things the other person or persons did if:
>
> 1. the defendant had a conscious intent that the criminal act be done and
>
> 2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually [commit] [attempt to commit] the crime.

> To be a principal, the defendant does not have to be present when the crime is [committed] [or] [attempted].

Petitioner contends that trial counsel should have requested this instruction because no evidence refuted that he was let into the apartment and got into an altercation resulting in both the victim and him being shot. He argues that the actions of the man who accompanied him to the apartment and urged him to shoot were "attributed to" Petitioner's original intended action, which was only to get a refund or get the real drug he believed he had purchased.

In Florida, "[f]elons are generally held responsible for the acts of their co-felons." Barron v. State, 990 So. 2d 1098, 1104 (Fla. 3d DCA 2007). " 'One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.' " *Id.* at 1104 (quoting Lovette v. State, 636 So. 2d 1304, 1306 (Fla. 1994) (quoting Jacobs v. State, 396 So. 2d 714, 716 (Fla. 1981))). If the defendant is a principal in a criminal enterprise, then he is responsible for a homicide, or attempted homicide, committed in the course of that criminal enterprise even if he had no intent to kill the victim. *See id.* *See also* Williams v. State, 261 So. 2d 855, 856 (Fla. 3d DCA 1972) (affirming the defendant's conviction for

second-degree murder where the co-perpetrator shot and killed the victim during the commission of a robbery that both the defendant and co-perpetrator had planned to commit); Diaz v. State, 600 So. 2d 529, 530 (Fla. 3d DCA 1992) ("Diaz was [ ] clearly liable for any acts, whether he knew of them ahead of time or not, committed by an accomplice in the furtherance of that offense . . . .").  These illustrate the context in which a principals instruction is appropriate.

The evidence of Petitioner's guilt presented at trial, however, did not hinge on the actions of the unnamed man who accompanied him. Regardless of Petitioner's asserted original innocent intent, it was Petitioner who carried and discharged the gun in the altercation that arose when, according to Petitioner's version of events, he demanded a refund or more drugs.  Petitioner apparently believes that a principals instruction would have been helpful to his defense, but it would in fact have been a basis on which the jury could find Petitioner guilty if they believed the man accompanying him was the main actor.  Such an instruction would not have been helpful to Petitioner and would not have changed the outcome of the trial.

The trial court's denial of the claim of ineffective assistance in failing to request the principals instruction or the independent act instruction was

correct under Florida law, in light of the state court record, and has not

been shown to be an unreasonable application of <u>Strickland</u> or any other

clearly established federal law as determined by the Supreme Court.

Petitioner has failed to show entitlement to relief under § 2254(d), and

habeas relief should be denied on Ground 2.

## **Ground 3: Conceding Guilt**

In this claim, Petitioner argues that trial counsel rendered ineffective

assistance by conceding guilt without first discussing the pros and cons of

such a defense strategy.  ECF No. 1 at 27.  Petitioner cites the following

comments made in the opening statement of his trial counsel, which

Petitioner contends constitute a concession of guilt:

> But some of the other things that Mr. Bauer [the
> prosecutor] just said you're going to see is a bunch of hooey.
> And this is what I mean in terms of what the evidence will show.
> Mr. Bauer just said that this is all about this situation where this
> poor Mr. Jones was the target of an attempted murder and the
> victim of burglary.  That is not what happened.  But I hasten to
> say this is not a situation, as you will see from the evidence,
> where Mr. Harris can come in here with clean hands.  We are
> not going to attempt to convince you that he did absolutely
> nothing wrong.  He did do some things that were wrong, but
> what you're going to see is the evidence is going to show you
> that what he did may be criminal, but it is not attempted murder
> and this is not armed burglary.  And you just wait and you will
> see what the evidence shows and you make the decision.
> . . . .
> At any rate, the evidence is going to show that, again, Mr.
> Harris had no business buying cocaine, absolutely no business.
> He had no business with a firearm.  But he was sold bad

> cocaine.  He paid money to Mr. Jones for it.  So the way these
> things go, he and his codefendant, Hunter, they go back to this
> apartment because they're not there to commit a burglary, but
> they're there either to get their money or real cocaine from the
> guy that sold it to them.  Now is that sick?  Is that wrong? Yes.
> But that's the way it is in the politics of contraband.
>
> So the evidence is going to show that this guy, Mr. Jones
> is no victim here, that he wasn't the target.  He was on the
> receiving end of this disagreement over this bad drug
> transaction, which this guy, Jones, commits . . . .

Ex. C at 22-24 (transcript pagination).  Defense counsel went on to argue

that even if the other man was "egging on" Petitioner to shoot Jones, the

evidence will show that the gun went off as a result of the struggle that the

victim started.  *Id.* at 25.  He also told the jury:

> You're going to hear from the court about what's called lesser
> included offenses.  In other words, in a case like this, if you feel
> the evidence warrants, you can find Mr. Harris guilty of the
> highest degree of charges that he faces, that is, attempted
> murder and burglary of a dwelling while armed.
>
> But what I think you're going to see, not that Mr. Harris
> comes in here, again, with clean hands, not that he's innocent
> of anything, but what he did ought to be matched with what you
> find that he should be convicted of.  And we submit to you that,
> in the end, he may be guilty of something like aggravated
> battery, something like that. . . .  But not attempted murder, not
> burglary of a dwelling while armed.

Ex. C at 25-26.

This claim was raised in Petitioner's 3.850 motion, which the trial

court denied and the state appellate court affirmed.  At the hearing on

Petitioner's motion, trial counsel testified that he did not think he made any

concession of guilt at trial.  Ex. K at 261.  He also testified that he conferred

with Petitioner and that they got along very well.  Counsel testified:

> A  I read that claim.  I don't think there was [any concession of guilt], except to this extent.  It was obvious that Mr. Harris did not come into that situation with clean hands.  He goes into a man's apartment, there are children in that apartment, he acts very aggressively, including obeying the request of his co-defendant to shoot an unarmed man.
>
> What I did was try to hope for something in the way of a lesser included offense that would not involve any type of mandatory sentence.  And so I do believe that I indicated that perhaps the jury could find my client guilty of aggravated battery, yes.
>
> So if you call that a concession of guilt, I mean, it was obvious that at least that happened.  . . .
>
>      . . . .
>      A  . . . He relied on me.  We discussed trying to get something, you know, that would be better than attempted murder.  We did discuss it.
>
> Q  Did he agree to concede guilt on aggravated battery?
>
> A  He told me to do what I felt was best.  I believe he gave me the authority to do that.  I don't think there was any question about that.
>
> Q  Do you recall whether there was any specific discussion about conceding an aggravated battery?
>
> A  I went to the jail several times.  I talked to him before the trial.  It was my opinion that if we tried to make this an all-or-nothing situation, he's either guilty as charged of attempted second degree murder with a firearm and burglary of a dwelling with a firearm, if we said our hands are completely clean, I mean, I just felt that would be a disaster.
>
> And he, you know, - - I don't know that he said, listen, absolutely, that's what I want to do.  But he was always a gentleman to me and told me to do what I though was best.

Ex. K at 261-62.

When Petitioner testified at the evidentiary hearing, he denied talking with his trial counsel about conceding guilt on lesser included offenses. Ex. K at 286-87. He said at first he relied on counsel because of his long experience and "allowed him to do what he thought best at that particular time," but later felt like he and counsel were not "coinciding" and that counsel was not doing his best. *Id.* at 286.

In denying post-conviction relief, the trial court explained that it was common trial strategy to concede certain levels of culpability in order to try to limit the verdict to a lesser included offense. Ex. K at 295. He concluded, "Under the facts of this case, I think it might have been more likely to be ineffective assistance of counsel for Mr. Harrison not to have tried to throw about some interest in the lesser included offenses. I accept Mr. Harrison's testimony, reject the defendant's testimony, that there was discussion about concessions." *Id.* The court further stated, "I accept Mr. Harrison's testimony that the defendant, not in real direct terms, authorized him to make these concessions in the theory of going for a verdict that was - - I think Mr. Harrison put it that it would have been foolish to try for an all-or-nothing verdict in this case." Ex. K at 295. The state court concluded that ineffective assistance of counsel had not been proven primarily based

on lack of proof of prejudice, explaining: "[M]aybe if we were here on aggravated battery that ended up including the mandatory minimums, maybe we'd have an argument about that.  But that's not what happened. Clearly, Mr. Harris was not prejudiced." *Id.* at 295-96.

The Supreme Court in <u>Florida v. Nixon</u>, 543 U.S. 175 (2004), made clear that an attorney does not have the authority, without explicit consent, to enter a guilty plea on behalf of a client, but that counsel's concession of some level of guilt at trial is not the functional equivalent of a guilty plea. *Id.* at 187-88.  The Court explained that despite the concession made by counsel in <u>Nixon</u>, the defendant retained the rights accorded a defendant in a criminal trial, including the right to have the state prove every element of the offense beyond a reasonable doubt.  *Id.* at 188.  The Court also explained that a concession of guilt was not presumed to be deficient performance, and under <u>Strickland</u>, the defendant still must prove "counsel's concession trial strategy was unreasonable."  *Id.* at 189.  The Court in <u>Nixon</u> found in that case that ineffective assistance had not been shown.  Although <u>Nixon</u> was a capital case, the principles set forth still apply.

In <u>Nixon</u>, counsel explained his strategy to the defendant, who did not respond.  In the present case, according to the testimony found credible by

the trial court, counsel and Petitioner discussed the need to attempt to limit

the verdict to a lesser level of offense.  Petitioner advised counsel to do

what he thought best, and that is the strategy counsel followed.  In light of

the testimony presented at the evidentiary hearing concerning counsel's

trial strategy and Petitioner's acquiescence to his counsel's best judgment,

the post-conviction court's credibility determinations and conclusions are

not objectively unreasonable.  Under § 2254(d), federal courts have "no

license to determine credibility of witnesses whose demeanor has been

observed by the state trial court, but not by them."  Marshall v. Lonberger,

459 U.S. 422, 434 (1983).  "[D]etermining the credibility of witnesses is the

province and function of the state courts, not the federal court engaging in

habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th

Cir. 2011).  Credibility and demeanor of a witness are considered to be a

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

The fact that the chosen trial strategy did not succeed, and Petitioner

was convicted of the higher crime, does not make counsel's actions

deficient.  *See* Sireci v. State, 469 So. 2d 119, 120 (Fla. 1985).  Under

Strickland, counsel's performance is to be measured without the distorting

effects of hindsight, and must be viewed under the circumstances facing counsel at the time and from counsel's perspective. Strickland, 466 U.S. at 689. A defendant challenging counsel's performance must overcome the strong presumption that counsel's conduct falls under the wide range of reasonable professional assistance and the presumption that counsel's action might be considered sound trial strategy. *Id.*

The post-conviction court found that the concessions made by counsel in an attempt to obtain a verdict, at most, on a lesser included offense was sound trial strategy when viewed from counsel's perspective at the time of trial and counsel was not ineffective. The state appellate court affirmed. Ex. O. The state court's finding was not unreasonable in light of the evidence against Petitioner. Further, the post-conviction court found that Petitioner had discussed the desirability of a verdict for a lesser offense and had given counsel his permission to do what he thought was best. These findings are supported by the record and are not contrary to or involving unreasonable application of Strickland or any other clearly established federal law as determined by the Supreme Court. Nor did the denial of relief on this claim, which was affirmed by the state appellate court, result in a decision based on an unreasonable determination of the facts in the record. Habeas relief on Ground 3 should be denied.

## **Ground 4: State's Reference to "Planned" Criminal Episode**

Petitioner alleges ineffective assistance of trial counsel by failing to
file a motion in limine to prevent mention of an unsupported motive—the
State's theory of a "planned" criminal episode.  ECF No. 1 at 29.  As
grounds, he cites the comments of the prosecutor in opening statement:
"You're going to hear that there may have been a card game that Gervane
Hunter, this Ra-Ra,[5] went to, where Uncle Junior was also at.  And it might
have come up that this Mr. Jones might have been holding something that
would make him a target if they could find out where he lived."  Ex. C at 19.

Petitioner also cites closing argument in which the prosecutor
suggested intent or a plan several times.  For example, the prosecutor in
closing discussed the testimony of the victim's daughter that when she was
driving to her father's apartment prior to the incident she saw three black
males standing by a truck in the parking lot.  Ex. E at 293; Ex. C at 112.
She testified that it was unusual and wondered what they were doing sitting
there "waiting."  *Id.*  She testified that she went into the apartment and
about 30 minutes later Petitioner and another man came to the door and
knocked.  Her father opened the door and they asked him something about

---

[5] Gervane Hunter, also known as "Ra-Ra," is the individual from whom Petitioner got the
gun that he took to Jones' apartment.  Uncle Junior is the victim's uncle.  Ex. C at 48-
49.

Uncle Junior.  *Id.* at 113.  She said the door then "bust open" and Petitioner came in with a gun which he pointed at her father's head.  She testified that Petitioner was asking her father for money and the other individual urged Petitioner to shoot her father.  Ex. C at 116.  The other individual then went into another room where the victim's fiancée was located.  Ex. C at 115. The victim's daughter did not hear any discussion about drugs.  When a child with Down Syndome ran into the room toward Jones, Petitioner pointed the gun at the child.  At some point, Jones and Petitioner began fighting over the gun and it began firing.  Ex. C at 66, 119, 127.  Jones' daughter testified the gun was going off while still in Petitioner's hand.  *Id.* at 127.  The victim, David Jones, gave similar testimony of what occurred. Ex. C at 56-61.

The prosecutor also made references to the "plan" in closing when he referred to the "plan" to go to the victim's apartment.  *See* Ex. E at 302. The prosecutor referred to the Petitioner's statement to law enforcement that he and the two other men went out, did some drinking, got some crack cocaine which was possibly bad, and "got ready to do some bad business with somebody."  Ex. E at 307.  The prosecutor also referred to Petitioner's statement to law enforcement that he got the loaded gun from "Ra-Ra" and went to the victim's apartment.  *Id.*  Another example of argument cited by

Petitioner, which he contends improperly referred to a "plan," was the prosecutor's statement that Petitioner went to rob a drug dealer because drug dealers have drugs and money. Ex. E at 323. The prosecutor argued, "[T]hat would provide motive for a robbery, for a bad deal, if you get drugs or money. Now, they only asked for money, but they believed he is holding." Ex. E at 324. "They went to rob him for whatever reason, for whatever they heard about him, to get money." *Id.*

Petitioner contends that these comments suggested that he and others had a plan to burglarize and rob, and possibly kill, the victim, which Petitioner characterizes as suggesting a motive not supported by the evidence. ECF No. 1 at 30. He argues that this suggestion of a preconceived plan to rob, burglarize, and possibly kill Jones prejudiced him and if counsel had moved in limine to prevent them, or objected to them, the result of the trial would have been different.

This claim was raised in Petitioner's Rule 3.850 motion and denied by the post-conviction court. Petitioner did not appeal denial of this claim in his pro se appeal from his Rule 3.850 proceeding. *See* Ex. L. The claim is therefore unexhausted and procedurally defaulted. *See* Henry, 513 U.S. at 365 However, regardless of any default, the claim is without merit.

At the evidentiary hearing, trial counsel testified that there was evidence to support the prosecutor's argument that there was some kind of pre-planning regarding the robbery.  Ex. K at 263.  He viewed the evidence as showing that Petitioner and the other two men acted in concert to muscle their way into the house because they had been sold bad drugs, and that they used a reference to Uncle Junior as a way to gain admittance.  *Id.*  In denying the claim, the court explained:

> I don't find anything that was stated that was objectionable.  Mr. Harrison couldn't find anything that was objectionable.  The initial comments at the door did relate to them having been in a card game with his uncle or some relative.  I don't recall the relationship.  But that wasn't the gravamen of what was said.  It was clear that the defendant went to the door because he was angry about being sold fake cocaine.  So I really don't - - frankly, I just don't understand the defendant's argument at all.  I don't find there was any ineffective assistance of counsel.  And it certainly had no impact on the decision of the jury.

Ex. K at 296.

Counsel cannot be deficient in failing to make a meritless or futile objection.  *See, e.g.*, <u>Denson v. United States</u>, 804 F.3d 1339, 1342 (11th Cir. 2015); <u>Shoenwetter v. State</u>, 46 So. 3d 535, 546 (Fla. 2010).  The evidence supported the prosecutor's argument that the visit to the victim's residence after arming himself with a loaded gun in order to demand money was not spur-of-the-moment but was, in fact, pre-planned to some extent by Petitioner and two other individuals.  Thus, any objection to the

argument would have been groundless.  The post-conviction court also found prejudice could not be shown.  This adjudication is entitled to AEDPA deference.  The state court adjudication is not unreasonable.

The state court correctly determined that Petitioner failed to demonstrate prejudice.  Several eyewitnesses and the victim testified that Petitioner burst into the apartment with a gun after pretending to know the victim's uncle and that Petitioner aimed the gun at the victim's head while demanding money.  The evidence was undisputed that a struggle ensued and the gun was fired while still in Petitioner's possession multiple times, wounding the victim.  The proof of attempted second-degree murder, under Florida law, requires no proof of a plan or intent to kill, only that the act evinced a depraved mind without regard for human life.  *See, e.g.*, Haygood, 109 So. 3d at 740.  The evidence supported that offense regardless of any suggestion—or lack of suggestion—by the prosecutor that Petitioner went to the victim's apartment pursuant to a plan.  Petitioner cannot demonstrate a reasonable probability that but for counsel's failure to object to those suggestions of motive, the result of the trial would have been different, a reasonable probability being one sufficient to undermine this court's confidence in the outcome.  *See* Strickland, 466 U.S. at 694.

Petitioner has failed to demonstrate that the adjudication of the state court denying post-conviction relief on this claim is contrary to, or involving an unreasonable application of, <u>Strickland</u> or any other clearly established federal law as determined by the Supreme Court—or that the adjudication resulted in a decision that is based on an unreasonable of the facts in the state court record. Accordingly, he has not met his burden under 28 U.S.C. § 2254(d). Therefore, relief on Ground 4 should be denied.

## Ground 5: Prejudicial Irrelevant Testimony

In this claim, Petitioner contends that his trial counsel rendered ineffective assistance by failing to file a motion in limine, or object, regarding prejudicial comments by witnesses that were not relevant. ECF No. 1 at 31. Petitioner cites testimony of the victim David Jones that Petitioner pointed his gun at a child who had Down Syndrome, which Petitioner argues was elicited only to gain sympathy and invoke the emotions of the jury. *Id.*; *see* Ex. C at 62. Petitioner also cites the prosecutor's closing argument in which he commented on the fact that when the shots were being fired, a child with Down Syndrome was in the room. ECF No. 1 at 32; *see* Ex. E at 284.

Petitioner raised this claim in his Rule 3.850 motion and, at the evidentiary hearing, trial counsel testified that he did not object to the

reference to the child having Down Syndrome because he felt nothing

would be gained by bringing more attention to it.  Ex. K at 264.  He also

testified:

> There was a child with Down Syndrome in the residence.  The
> testimony was that, in order to intimidate the victim, Mr. Harris
> pointed the weapon, loaded, not only at the victim, but at the
> child in order to coerce the victim and his lady friend to give up
> the money that Mr. Harris and Rah-Rah had lost in the drug
> purchase. . . . .
>
>      Had Mr. Bauer tried to make it a feature of the case, had
> he really harped on it, of course, I would have objected under
> 90.403.  But, you know, you commit a crime like this, the
> defendant is stuck with the turmoil that he causes.  And I felt it
> was relevant.  It is not my practice to object which I think the
> trial court is going to reject my objection.  I felt it was relevant.
> So I didn't object.

Ex. K at 264-65.  When asked how he thought it was relevant, counsel

explained, "Because the child was there, she was one of the victims of this

situation, and it is what it is.  The State is entitled to let the jury know what

is going on in a particular situation."  Ex. K at 265.

The trial court denied the claim, concluding that there was no basis to

object.[6]  The court explained, "It was part of the facts.  It was relevant if for

no other reason than to explain why the child could not reasonably be a

witness in the case. . . .  The defendant is not entitled to a sanitized version

---

[6] Again, this claim was not appealed to the state First District Court of Appeal, but
regardless of any default, the claim it is without merit.

of the facts." Ex. K at 296.  The post-conviction court found that the evidence and argument were not used in any way that was unfairly prejudicial to the defendant and ineffective assistance had not been shown. This ruling is entitled to AEDPA deference and has not been shown to be incorrect or unreasonable.

Under Florida law, admissibility of evidence will not be disturbed absent a clear abuse of discretion.  *See* Delhall v. State, 95 So. 3d 134, 155 (Fla. 2012); Valle v. State, 70 So. 3d 530, 546 (Fla. 2011).  This discretion is limited by the rules of evidence and by the principles of stare decisis.  McDuffie v. State, 970 So. 2d 312, 326 (Fla. 2007).  Under Florida law, relevant evidence is admissible unless its probative value is outweighed by danger of unfair prejudice, confusion, misleading the jury, or if it is cumulative.  *See* §§ 90.402, 90.403.  The evidence of who was present in the room and the actions of the Petitioner during the incident are relevant to the jury's understanding of the event and the offenses being charged.  The references to the child's condition were matter-of-fact and fairly limited—and were not argued in a way calculated to seek sympathy or engender anger.

"It is improper for a prosecutor to inflame the jury by appealing to passions or prejudices instead of to reason and to the law."  United States

v. Bergman, 852 F.3d 1046, 1070 (11th Cir. 2017) (citing Cunningham v.

Zant, 928 F.2d 1006, 1020 (11th Cir. 1991)).  *See also* United States v.

Rodriguez, 765 F.2d 1546, 1560 (11th Cir. 1985).  "Moreover, a prosecutor

must refrain from improper methods calculated to produce a wrongful

conviction" and improper suggestions or insinuations calculated to mislead

the jury.  *Id.* at 1559-60.  The minor evidential references to the child with

Down Syndrome and the fleeting comment in closing argument have not

been shown to run afoul of these principles and presented no risk of

misleading the jury when viewed in the context of the totality of the

evidence.

Because the admission of evidence is left to the sound discretion of

the trial court and because the references to the child's condition were part

of the facts of the incident, and were not excessive or flagrant, the state

court was correct in determining that trial counsel was not deficient in failing

to object.  Counsel is not deficient for failing to make a meritless objection.

Denson, 804 F.3d at 1342.  Moreover, Petitioner cannot demonstrate that

but for counsel's alleged error, confidence in the result of the trial is

undermined.  The evidence of Petitioner's actions in invading the victim's

home, pointing the gun, demanding money, firing the gun, and injuring the

victim supported the jury's verdict without any reliance on sympathy or anger related to comments about the child's condition.

The state court's adjudication of this claim has not been shown to be unreasonable in light of the state court record. Nor did the adjudication result in a decision meeting the requirements of 28 U.S.C. § 2254(d). Habeas relief on Ground 5 should be denied.

### Ground 6: Prosecutorial Misconduct in Case-in-Chief

In Ground 6, Petitioner contends that trial counsel rendered ineffective assistance in failing to object to prosecutorial misconduct in the State's case-in-chief. ECF No. 1 at 32. Petitioner cites the prosecutor's questions to the victim, David Jones, during his testimony, asking him to confirm that he had been subpoenaed to tell the truth and to confirm that, because he had resolved his criminal case relating to possession of cocaine that arose as a result of the incident with Petitioner, Jones could not "take the Fifth Amendment." ECF No. 1 at 33 (citing Ex. C at 54). Petitioner contends this amounted to improper bolstering.

Petitioner next cites the prosecutor's questions of Jones that elicited his testimony that he allowed the police to search "every nook and cranny, drawer, everything." ECF No. 1 at 33 (citing Ex. C at 83-84). Petitioner contends this testimony was improper because it "was based on

speculation" that such a broad search occurred in view of the fact that when the search was conducted, Jones was in the hospital.[7]

Petitioner argues that his counsel rendered ineffective assistance by failing to object to these comments and testimony, and that if counsel had objected, "the jury would have found the State's evidence insufficient to support the charges and/or believed the prosecutor overly elaborated the strength of its case."  ECF No. 1 at 34.  This claim was raised in the Rule 3.850 motion.  During the evidentiary hearing, trial counsel testified that in retrospect, he probably should have objected to the prosecutor's comments concerning David Jones being present under subpoena and being required to tell the truth.  Ex. K at 265.  Counsel testified that at the time, his thinking was "this so-called victim was a drug dealer."  *Id.*  He further stated,

> And to have Mr. Bauer up there trying to sanitize this victim drug dealer, to me, only emphasizes the fact that this guy was dirty, which is what I tried to work on during the entire trial.  So, you know, at the time, I just didn't feel that that hurt me.
>
> I agree that it was bolstering and I could have objected and probably the judge would have or may have sustained that. I do think that was a little much on Mr. Bauer's behalf - -  yes, on Mike Bauer's behalf.

---

[7] Petitioner also cites the testimony of Officer Doug Clark, during which Petitioner contends the prosecutor "impermissibly inferred (sic) that Mr. Harris was faking the need for wheelchair" in order to gain sympathy.  ECF No. 1 at 33 (citing Ex. C at 265). This latter claim was abandoned by Petitioner at the evidentiary hearing and no ruling was obtained from the court.  This portion of Ground 6 is therefore unexhausted and procedurally defaulted.  *See* Ex. K at 267, 297.

But, to me, it just made the victim look even worse to
have - - it's pretty bad when the State Attorney has to get up
and try to vouch for a witness.  It makes the witness look even
worse.

Ex. K at 265-66.  As to the issue of whether it was improper to elicit

testimony from the victim that his home had been thoroughly searched,

counsel testified he did not know if the victim was aware of the extent of the

search and might have been in the hospital at the time.  Ex. K at 266.

However counsel testified: "But if . . . the significance of this testimony is

that this guy was not a drug dealer[,] I mean, I think everybody in that

courtroom knew the victim - - whether or not they found any drugs or

money back there in the bedroom, they knew this guy was a drug dealer.  I

mean, I would say, frankly, searching every nook and cranny, pretty

meaningless.  Not prejudicial to Mr. Harris."  Ex. K at 266-67.  In fact, the

crime scene investigator who conducted the search agreed that the officers

were "able to search in every nook and cranny of the apartment."  Ex. D at

197.

The post-conviction court denied the claim, noting that the

prosecutor's questions to Jones about being under subpoena and being

required to testify fully was "frankly, a silly comment by the prosecutor."  Ex,

K at 297.  The court stated:

> I think I agree with Mr. Harrison [defense counsel], that the
> prosecutor simply made himself look bad trying to vouch for the
> credibility of this drug dealer.  Mr. Harrison says, you know,
> maybe in retrospect he should have objected.  Frankly, I think it
> played right into his hands that the prosecutor is losing
> credibility by making this argument.  The jury knows that a
> subpoena is not a guarantee of the truth.

Ex. K at 297.  The post-conviction court further concluded that counsel had

not been shown to have been ineffective by failing to object to the "silly

comment" of the prosecutor because it was clear the victim was a drug

dealer.  *Id.*  Denial of this claim was not appealed to the state district court of

appeal but, regardless of any procedural default, it lacks merit.

During his testimony David Jones told the jury that he had been

charged and convicted for cocaine found in his apartment.  Ex. C at 50-51.

He also testified that he allowed the police to search his apartment.  *Id.*

After the prosecutor reminded Jones that he was under subpoena and must

tell the truth, he was asked if he sold drugs out of his apartment.  Ex. C at

55.  Jones answered that he did not.  When asked if he "were to sell drugs,

would [he] do that at your house or somewhere else."  *Id.*  He replied, "I

mean, I didn't sell no drugs at my house.  If a person sells drugs or

whatever, it wouldn't be at their home, I would imagine."  When asked why,

he responded, "to avoid situations, you know what I'm saying, of people

coming to your house or whatever with your family and trying to rob you."  *Id.*

He agreed that selling drugs "could be done somewhere else." *Id.* He later testified that he had sold cocaine in the past from a street corner, although he denied selling any cocaine to Petitioner or the other men who came to his apartment on the day of the shooting. Ex. C at 78. Jones also testified that police did find several baggies with cocaine, several baggies with white residue, but no cash in the apartment. Ex. C at 82-85. Jones' neighbor testified that a lot of people visited Jones' apartment and each stayed for only a short time. Ex. C at 32. Petitioner's statements to police were placed in evidence in which he said Jones sold him, Ra-Ra, and another unidentified man bad drugs. Ex. D at 219-20.

Petitioner contends that the reference to the subpoena and how Jones must tell the truth, and the fact that Jones could not have personally known if the police searched every nook and cranny, demonstrate prejudice because it bolstered Jones' testimony and tended to show Jones was not a drug dealer. First, the evidence was not in dispute that Jones had initially given police the right to search the apartment, although he later withdrew it because children were in the apartment. The police did end up searching pursuant to warrant, Ex. D at 193, and it is logical to assume that the police would do a thorough search, which is what Jones assumed when he testified that they searched every nook and cranny. In fact, the evidence showed

that the police did find some cocaine in the apartment and that Jones was charged.  Jones' testimony admitting to selling cocaine in the past, and the fact that cocaine and paraphernalia was found in the apartment, support the conclusions of trial counsel and the post-conviction court that it was clear that Jones was, in fact, a drug dealer.  The testimony complained of did not refute this conclusion.

Petitioner has not shown that, in light of the state court record, the adjudication by the trial court finding trial counsel had not been shown to be ineffective was not unreasonable.  As noted earlier, the question is not whether the state court ruling is correct but whether it was unreasonable, which is a higher standard.  Mirzayance, 556 U.S. at 123.  The ruling was not contrary to Strickland, or any other clearly established federal law as determined by the Supreme Court.  Because the requirements of § 2254(d) have not been met, habeas relief on Ground 6 should be denied.

### Ground 7: Jury Instructions on Self-Defense

Petitioner alleges ineffective assistance of trial counsel in failing to request jury instructions on self-defense where, he argues, the evidence warranted such an instruction.  ECF No. 1 at 35.  He contends that if trial counsel had requested a self-defense instruction, "the jury would have had instructions that satisfied the evidence for, at best, aggravated battery."  *Id.*

Petitioner raised this claim in his Rule 3.850 motion in the state court.  At

the evidentiary hearing held on the motion, trial counsel testified that a self-

defense instruction was given.  He testified, "Well, first of all, at my request,

the trial court did give the jury an instruction on self-defense, on justifiable

use of deadly force.  That instruction was given to the jury."  Ex. K at 260.

He explained that a portion of Florida Standard Jury Instruction (Crim.)

3.6(f) that "fit the circumstances" was given.  *Id.* at 261.  The post-

conviction court denied the claim of ineffective assistance of counsel,

stating:

> Mr. Harris' statement to the police is that he came in with a gun,
> a struggle ensued, and essentially - - don't use the terminology,
> but basically the gun went off accidentally twice.  That
> testimony was elicited by Mr. Harrison, Page 221 and 222 of
> the transcript, and Page 226, that the gun went off during the
> struggle, that the defendant didn't intend to shoot the
> defendant.
>     That really doesn't fit with the self-defense instruction.
> Interestingly enough, they did get a self-defense instruction,
> although I'm not sure they were factually entitled to one.  Page
> 329 of the transcript, "Attempted killing of a human being is
> justified and lawful if necessarily done to while resisting an
> attempt to murder or commit a felony upon the defendant or to
> commit a felony in any dwelling house in which the defendant
> was at the time of the attempted killing," that is the meat of the
> self-defense instruction.  Although Mr. Harrison [defense
> counsel] didn't really address it, it certainly was a much more
> favorable instruction to him, to Mr. Harris, than the full
> instruction would have been.

Ex. K at 292-93.  The court further explained that if the full self-defense instruction had been given, it would have told the jury that Petitioner was not entitled to use deadly force if the he initially provoked the use of force against himself, unless the force asserted against him was so great that he reasonably believed he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force, and that he withdrew from physical contact. Ex. K at 293-94.  The court stated, "Under that instruction, Mr. Harris clearly loses on the facts of this case.  That would have been what would have been given if the full self-defense instruction was given." *Id.* at 294. Although the court found trial counsel did not argue self-defense to the jury, "the defense was much better off under the instructions that were given than had a full instruction been given." *Id.*  The court concluded that ineffective assistance of counsel had not been shown.  The claim was not raised in Petitioner's pro se brief to the state First District Court of Appeal and is therefore unexhausted. *See* Ex. L.  However, notwithstanding any procedural default, the claim lacks merit.

Petitioner has failed to demonstrate that the post-conviction court's conclusion that trial counsel did not render ineffective assistance was unreasonable based on the evidence presented.  The jury was provided the

opportunity to determine that Petitioner's actions were justified, or

accidental, if they chose to believe Petitioner's version of events as given to

the police.  Petitioner chose not to testify at trial.  Ex. E at 272.  The

evidence presented by the State did not support an instruction for self-

defense.  Petitioner arrived with a loaded gun and forced his way into

Jones' residence.  Jones was unarmed.  Petitioner demanded money while

aiming the gun a Jones' head, and was urged by a cofelon to shoot Jones.

During a struggle, with Petitioner still in control of the gun, he fired the gun

several times.  There was no evidence that Petitioner attempted to

withdraw from the conflict.  Petitioner did not demonstrate a reasonable

probability that but for counsel's failure to ask for the full self-defense

instruction, the result of the trial would have been different.  Thus, neither

deficiency nor prejudice was shown, as is required by <u>Strickland</u>.

As the post-conviction court noted, the instructions given were more

favorable to Petitioner than the full self-defense instruction would have

been.  Petitioner contends the self-defense instruction, if given, would have

supported a conviction for aggravated battery "at best."  Although this

statement is somewhat ambiguous, trial counsel did argue to the jury that

the evidence supported not attempted second-degree murder, but some

lesser offense such as aggravated battery.  Ex. E at 317-18.  The jury

found, however, that Petitioner's actions that resulted in the shooting were evidence of a depraved mind regardless of human life, as was required to find Petitioner guilty of attempted second-degree murder.

Because the state court adjudications have not been shown to be contrary to or an unreasonable application of <u>Strickland</u> or any federal law, habeas relief should be denied on Ground 7.

### **Ground 8: Prosecutorial Comments in Closing Argument**

In this claim, Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to prejudicial prosecutorial comments in closing argument. ECF No. 1 at 36. He cites eleven examples of alleged improper comments, treated here as subclaims, several of which were discussed earlier in grounds raised in this proceeding.

Petitioner raised these same subclaims in state court in Claim 8 of his Rule 3.850 motion. Ex. K at 200-02. An evidentiary hearing was held on the subclaims, although the state court noted that subclaims 1, 6, 7, and 9 were abandoned and those claims were not discussed.[8] Ex. K at 297, 299;

---

[8] In addition, Petitioner abandoned subclaim 11. Petitioner's counsel at the evidentiary hearing indicated he was not seeking a ruling on it and did not further request a ruling on it in the state court. *See* Ex. K at 273. The post-conviction court did not address subclaim 11 or any of the other claims that were abandoned in the state court. Those claims are therefore unexhausted and procedurally defaulted. Petitioner has not provided any basis upon which the default may be excused. Regardless of default,

*See* Ex. K at 267, 273.  The court also noted that subclaim 2 is identical to

a subclaim decided in Ground 6 regarding the prosecutor's comments to

David Jones that he was subpoenaed and under oath.  Ex, K at 297-98.

The court found that subclaim 8, relating to the prosecutor's suggestion of a

plan, was discussed in Ground 4 of the Rule 3.850 motion.  Ex. K at 299.

As to the remaining subclaims that were not abandoned or discussed in

earlier grounds, the state court found Petitioner failed to demonstrate

ineffective assistance of counsel for failing to object to the prosecutorial

comments.

Regarding subclaim 3, alleging that the prosecutor made improper

remarks regarding Petitioner's silence or failure to testify, the prosecutor's

comments relating to Petitioner's statements to police were as follows:

> We know Mr. Harris was there.  He gave, what I submit to you,
> is a self-serving statement, knowing that it could be used
> against him, knowing that he was caught, knowing that the man
> had been shot, knowing he was in the hospital with the same
> man, and he had a choice to make, talk or not talk.  And what
> he gave you is what he gave the officers in his own interest,
> because he leaves a lot out.

---

denial of relief on the abandoned claims has not been shown to be contrary to
Strickland or any other federal law as required by 28 U.S.C. § 2254(d).

Ex. E at 273.[9]  The post-conviction court stated, "I read page 273.  I don't find any comment on the defendant's right to remain silent."  Ex. K at 298.

Trial counsel testified at the evidentiary hearing that he did not think the prosecutor was commenting on Petitioner's right to remain silent, and believed the post-arrest statements were helpful to the defense.  Ex. K at 270.  He said, "And, frankly, since Mr. Harris chose not to testify at trial, it's all we had to go on to try to create some reasonable doubt about what Mr. Harris did or did not do."  *Id.*  Counsel testified that the prosecutor's comments that the exculpatory statement left some things out was "legitimate argument" because Petitioner "tr[ied] to create a defense for himself during the arrest and during his medical treatment."  *Id.*

The prosecutor's comments on Petitioner's statements to police were not comments on his right to remain silent—they were comments on his statements made after waiving his right to remain silent.[10]  The statements were admitted into evidence and in them Petitioner provided a scenario suggesting that the gun went off accidentally in a struggle initiated by the

---

[9] These comments on page 273 of the transcript were the subject of Petitioner's subclaim 1, on which post-conviction counsel indicated he was not proceeding, *see* Ex. K at 267, and which the trial court found was abandoned.  The passage on page 273 was discussed in deciding subclaim 3, in which Petitioner cites comments on a different page of the transcript, page 278, lines 15 through 23.  However, nothing on page 278 relates to Petitioner giving statements to the police or failing to testify.

[10] Petitioner's motion to suppress the statements made to police after his <u>Miranda</u> warnings while he was in the hospital was denied.  Ex. A at 28.

victim after Petitioner sought to be reimbursed for bad drugs Jones had provided.  *See* Ex. D at 220.  The statements were "self-serving" as the prosecutor pointed out, and the prosecutor's statements were fair comment on the evidence.

A defendant waives the right to remain silent when he voluntarily provides a statement to police after being informed of his <u>Miranda</u> rights. *See, e.g.*, <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 385 (2010); <u>Anderson v. Charles</u>, 447 U.S. 404, 408 (1980).  Thus, comment upon that statement after it is admitted at trial is not an impermissible comment on defendant's right to remain silent or the choice not to testify.  *See, e.g.*, <u>United States v. Hanrahan</u>, 508 F.3d 962, 968 (10th Cir. 2007) (holding that prosecutor's comment on defendant's post-arrest statement was fair comment on the evidence and not an improper comment on the defendant's decision not to testify).  The Florida court in <u>Watson v. State</u>, 504 So. 2d 1267 (Fla. 1st DCA 1986), explained that comment by the prosecutor on the post-arrest exculpatory statement by the defendant was not an improper comment on his right to remain silent because the right had been waived and because it was a fair comment aimed at pointing out inconsistencies in the exculpatory statement.  In <u>Wray v. State</u>, 639 So. 2d 621 (Fla. 4th DCA 1994), similar to this case, the prosecutor commented on what the defendant's post-arrest

statement did <u>not</u> say.  *Id.* at 623.  The court held that it was not an

improper comment on the defendant's right to remain silent and the

objection was correctly overruled because

> [i]t is clear that the prosecutor's comment was only referring to
> facts the defendant omitted when the defendant gave his
> statement.  Since the defendant was read his <u>Miranda</u> rights,
> he waived the right to remain silent as to his statement.  The
> prosecutor's comment could not, therefore, have infringed on
> that right.

*Id.* at 624.  In the present case, even if counsel had objected to the

prosecutor's comment on his pre-arrest statement, Petitioner cannot show

a reasonable probability that the objection would have been sustained or

that the result of the trial would have been any different.  The post-

conviction court's adjudication of this claim, and affirmance by the State

district court of appeal, was not unreasonable and this subclaim does not

provide a basis for federal habeas relief.

   In subclaims 4 and 5[11] of this Ground 8, Petitioner contends that the

prosecutor improperly speculated about how the shooting would have

occurred based on the bullet's trajectory and that he "acted as an expert on

guns" with remarks about trigger pressure and how the gun was ready to

---

[11] The post-conviction court indicated that subclaim 5 was abandoned.  Ex. K at 299.
Regardless of any failure to exhaust, because claim 5 is related to claim 4, both claims
are discussed here.

fire.  ECF No. 1 at 37.  In the portion of the trial transcript cited by Petitioner, the prosecutor argued that the evidence showed Petitioner had his finger on the trigger and that the victim would have been shot in the head but was able to push the gun away toward the left, resulting in the bullet wound to his arm.  Ex. E at 282.  The prosecutor argued that the only way the victim could have been responsible for making the gun go off would have been to pull the gun toward himself, which was not what the evidence showed.  The victim David Jones testified that as Petitioner was pointing the gun at his face, Jones "pushed the gun away or whatever and he shot me in my shoulder."  Ex. C at 64.  The prosecutor argued, "The testimony is he pushed the gun this way.  He pushed it.  The gun is in his face and he pushes it and he gets shot."  Ex. E at 283.

The prosecutor also pointed out that the gun had a trigger guard and there would have been no way for the victim to shoot himself with that firearm.  *Id.*  The prosecutor argued: "[Y]ou can see that trigger has got . . . .  I would estimate about a half an inch that it's got to be pulled back, that gun needs to fire.  And what does that mean?  Evidence of depraved mind without regard for human life."  Ex. E at 283.  He also noted that for the gun to fire, the slide would have had to have been pulled back placing a round of ammunition in the chamber.  *Id.*  The evidence presented by the crime

scene investigator was that the gun found at the scene was a .9 mm semi-automatic handgun with a slide.  Ex. D at 189-191.  The gun referred to by the prosecutor was admitted into evidence and could be viewed by the jury.

The post-conviction court concluded that the prosecutor was not arguing improperly or as an expert on trajectory of the bullet, but was making fair comment on the evidence and no deficiency of counsel was shown.  Ex. K at 298-99.  Based on the evidence presented, the state court adjudication of subclaims 4 and 5 was not incorrect or unreasonable based on the state court record.  As with all but one of Petitioner's other claims, denial of relief on this claim was not raised on appeal to the state district court of appeal.  Even so, it lacks merit, as will be discussed next.

In subclaim 10 of Ground 8, Petitioner contends that the prosecutor improperly remarked that Petitioner admitted to armed burglary, which was unsupported by the record.  ECF No. 1 at 38.  Petitioner cites the closing argument in which the prosecutor stated:

> So, now he tells the officer, oh, well, this was about bad crack cocaine, and then he goes on, he did, and he admits he gets the gun from Ra-Ray, he has the gun in his waistband and he goes to that apartment.  He is admitting to burglary while armed.  He is admitting going into somebody's house with a gun.
> What he tries to mitigate is he wasn't intending to shoot anybody.  Well, he was prepared to shoot somebody, because

> he had a loaded gun and it was cocked and ready to fire and
> his buddy was telling him, Shoot him.

Ex. E at 307.  The post-conviction court, and Respondent, interpret this subclaim as the same "concession issue" that was previously addressed in Claim 3 of the Rule 3.850 motion and Ground 3 of this petition.  However, in Ground 3, Petitioner is challenging his own counsel's own statements which suggested that Petitioner might have been guilty of some lesser offense.  Subclaim 10 addresses the prosecutor's statement that Petitioner admitted armed burglary. The post-conviction court did not expressly address subclaim 10.

Based on the context in which the statement was made, it is apparent that the prosecutor was arguing that the conduct Petitioner admitted in his statement to police was tantamount to an admission of armed burglary. Because the comment was tied closely to the evidence in the case, and because the other evidence in the case proved the elements of armed burglary, Petitioner has shown no reasonable probability that but for the alleged error of counsel in failing to object, the result of the proceeding would have been different—a reasonable probability being one sufficient to undermine the court's confidence in the outcome.  For these reasons, the

state court's denial of post-conviction relief on this subclaim was not unreasonable.

Under Florida law, prosecutors are permitted wide latitude in closing argument, but are not permitted to make improper argument. Reynolds v. State, 99 So. 3d 459, 473 (Fla. 2012). The comments of counsel cited by Petitioner as requiring objection by his trial counsel were not improper because they were fair comment on the evidence. For that reason, any objection would likely have been meritless; and counsel is not deficient for failing to make a meritless objection. *See* Denson, 804 F.3d at 1342; Shoenwetter, 46 So. 3d at 546. To the extent counsel should have objected, prejudice has not been shown. Petitioner has not shown a reasonable probability that but for the alleged unprofessional conduct of counsel, the result of this proceeding would have been different. For all these reasons, the state court adjudications are not contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court. And the adjudications were supported by, and a reasonable determination of the facts in, the state court record. Habeas relief on Ground 8 should be denied.

## Ground 9: Motion for New Trial

In his final ground, Petitioner argues that trial counsel rendered ineffective assistance in failing to file a motion for new trial challenging the weight and/or sufficiency of the evidence.[12]  ECF No. 1 at 39.  This claim was raised in the Rule 3.850 motion in state court and an evidentiary hearing was held, although denial of the claim was not appealed.  Petitioner contended in state court and now argues here that counsel should have filed a motion for new trial because the case was simply a "swearing match between him and the victim."  ECF No. 1 at 39.  He also argues that a motion was necessary to allow appellate review of the weight of the evidence and other trial error, and failure to make the motion waived an otherwise meritorious appeal.

To support this claim, Petitioner cites Jones' neighbor's testimony that about ten minutes elapsed from the time he heard the shots until he saw Jones' leave the apartment.  He contends this testimony defeats the state's argument that Jones did not have time to get rid of drugs or money

---

[12] A motion for new trial is not a necessary predicate for arguing the sufficiency of the evidence on appeal.  The issue of sufficiency of the evidence is preserved by a motion for judgment of acquittal pursuant to Florida Rule of Criminal Procedure 3.380 and the trial court's ruling on it is reviewed *de novo* on appeal.  *See* Evans v. State, 177 So. 3d 1219, 1239 (Fla. 2015).  Under Florida Rule of Criminal Procedure 3.600(a)(2), a motion for new trial raises the issues of whether the "verdict is contrary to law or the weight of the evidence."  Fla. R. Crim. P. 3.600(a)(2).

as the State argued.  Petitioner also argues that Jones was impeached on several different issues concerning contacting his uncle, charges for his drug possession, whether he sold drugs in the past, the scope of the apartment search, and the fact that Jones was a convicted felon.  ECF No. 1 at 40-41.  Petitioner cites the testimony of an eyewitness who never saw the fight and gave different answers concerning what the other man said to her and how many shots she heard.  Petitioner cites other evidence, alleged trial court error, and alleged prosecutorial misconduct, which he contends would have provided grounds for a new trial if a motion had been filed.  ECF No. 41-42.

At the evidentiary hearing, trial counsel testified he did not know of any legitimate grounds upon which to base a motion for new trial.  Ex. K at 283.  He testified, "Well, the evidence in this case was overwhelmingly supportive of the verdicts that were reached.  And so, in those case[s], sometimes we do not [file a motion for new trial.]"  Ex. K at 284.  He testified that in spite of the fact that he successfully impeached some of the State's witnesses, "when all is said and done, there was competent and substantial evidence in this record that Mr. Harris and his partner barged into this place and they shot a man, you know, at point blank range

because they wanted their money back from a botched drug deal."  Ex. K at

284.  The post-conviction court denied the claim, explaining:

> There's no conceivable basis for a motion for a new trial. . . .
> There was overwhelming evidence. . . .  There is no
> conceivable basis that a motion for a new trial would have been
> granted.  The defendant didn't lose any appellate rights by the
> fact that a motion for new trial was not made.  He still certainly
> had an argument as to the sufficiency of the evidence, although
> it would be a totally frivolous argument.  There was no
> ineffective assistance of counsel, nor prejudice for failure to file
> a motion for new trial.

Ex. K at 299-300.  The ruling was affirmed on appeal and is entitled to

AEDPA deference.

A motion for new trial, if one had been filed, would have been

directed to the sound discretion of the trial court.  When considering a

motion for new trial based on the argument that the verdict is against the

weight of the evidence, the trial court must exercise its discretion to

determine whether a greater amount of credible evidence supported one

side or the other.  *See* Fulword v. State, 29 So. 3d 425, 426 (Fla. 5th DCA

2010).  The motion is intended to provide a "safety valve" when technically

sufficient evidence proves the criminal charge but the weight of the

evidence does not appear to support the verdict.  *See* State v. Shearod,

992 So. 2d 900, 904 (Fla. 2d DCA 2008).

Petitioner has not demonstrated that, based on the evidence before the court, a new trial would have been granted.  As trial counsel testified, and as the post-conviction court agreed, there was ample evidence of the elements of both attempted second-degree murder and armed burglary in this case.  Examples of impeachment of witnesses concerning whether Jones was a drug dealer or whether he called or did not call his uncle could not refute his testimony and that of the other eyewitnesses that Petitioner burst into home with a loaded gun, pointed it at Jones' head, demanded money, and fired the gun several times during a struggle.  The weight of this evidence supported the verdicts for both offenses.  Petitioner has demonstrated no errors of the trial court that would have rendered a motion for new trial successful.  Even if trial counsel had arguable grounds to file a motion for new trial, Petitioner has failed to demonstrate that but for that error, a new trial would have been granted by the trial court.

Petitioner also contends that by failing to file a motion for new trial, Petitioner was deprived of the opportunity to challenge the weight of the evidence on appeal.  Petitioner can cite no authority announcing a *per se* rule of ineffective assistance for failing to file a motion for new trial.  *See* Jewson v. Crosby, No. 3:04cv71-MCR/MD, 2005 WL 1684209, *7 (N.D. Fla. Mar. 11, 2005), report and recommendation adopted as modified, No.

3:04cv71-MCR/MD, 2005 WL 1692617 (N.D. Fla. June 16, 2005).  *See also* Manley v. State, 605 So. 2d 1327, 1328 (Fla. 2d DCA 1992) (affirming denial of relief on ineffective assistance claim based on attorney's failure to file timely motion for new trial because defendant failed to show likelihood that a new trial would have been ordered).  Moreover, under Florida law, "[a]ppellate courts should more closely concern themselves with the legal sufficiency of the evidence, rather than the weight assigned to or the credibility of the evidence before the trial court."  Monroe v. State, 191 So. 3d 395, 401-02 (Fla. 2016) (citing Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1981)).  Petitioner was not deprived of a right to challenge the sufficiency of the evidence on appeal.

The Supreme Court has emphasized that most ineffective assistance of counsel claims are governed by Strickland, which requires both deficiency and prejudice in order to demonstrate ineffective assistance of counsel.  A presumed prejudice standard is applicable only in a few narrowly circumscribed situations not present here.  *See, e.g.*, Roe v. Flores-Ortega, 528 U.S. 470, 482 (2000).  Petitioner has not shown that prejudice resulted from his inability to challenge the weight of the evidence on appeal.

Petitioner has failed to demonstrate that the state court denial of relief on this claim is contrary to, or an unreasonable application of, <u>Strickland</u> or any other clearly established federal law as determined by the Supreme Court.  Nor has he shown that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Habeas relief on Ground 9 should, therefore, be denied.

## Conclusion

Based on the foregoing, Petitioner Mitchell Harris is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 3, 2017.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon
all other parties. A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof. Fed.
R. Civ. P. 72(b)(2). Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control. If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**